**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                 No. CR 04-2209 JB

JOSE LOPEZ-LOPEZ,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) the Defendant's Sentencing Memorandum and Motion for a Downward Departure, filed June 27, 2005 (Doc. 29); and (ii) the Defendant's Addendum to Defendant's Sentencing Memorandum and Motion for Downward Departure, filed August 1, 2005 (Doc. 34). The primary issues are: (i) whether the Guidelines require a sixteen-level enhancement for a prior conviction for a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii); (ii) whether Lopez-Lopez should be granted a downward departure; and (iii) whether the Court should deviate from the Sentencing Guidelines ("Guidelines"). The Court concludes that a sixteen-level enhancement is warranted; that it should deny a downward departure; and that it should deviate from the Guidelines.

**PROCEDURAL BACKGROUND**[1]

On November 4, 2004, a federal grand jury returned a one-count Indictment against Lopez-Lopez. The grand jury charged Lopez-Lopez with violating 8 U.S.C. § 1326(a)(1) and (2) and 8

---

[1] The Court set forth more details related to Lopez-Lopez' first plea agreement in its earlier Memorandum Opinion and Order. See generally Memorandum Opinion and Order, filed July 15, 2005 (Doc. 32). That background is incorporated herein.

U.S.C. § 1326(b)(2), Reentry of Deported Alien Previously Convicted of an Aggravated Felony.  The Indictment alleged that he had been found in Luna County, New Mexico, even though he had been previously convicted of Aggravated Assault and subsequently deported.

On December 16, 2004, Lopez-Lopez waived his right to prosecution by Indictment and consented to proceeding by Information.  See Waiver of Indictment at 1, filed December 16, 2004 (Doc. 14).  On that same day, Lopez-Lopez pled guilty to a single count Superseding Information charging him with violating 8 U.S.C. § 1326(a)(1) and (2) and 8 U.S.C. § 1326(b)(2), Reentry of Deported Alien Previously Convicted of an Aggravated Felony.  See Clerk's Minutes at 1, filed December 16, 2004 (Doc. 17).  Lopez-Lopez also entered into a plea agreement pursuant to rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, stipulating to a total offense level of nine. See Plea Agreement ¶ 8(a), at 4, filed December 16, 2004 (Doc. 16).

The United States Probation Office prepared the Pre-Sentence Report ("PSR"), which calculated Lopez-Lopez' base offense level as eight.  See PSR ¶ 9, at 3.  The PSR recommended a sixteen-level enhancement because of Lopez-Lopez' prior conviction in Arizona on September 19, 1997, for aggravated assault in violation of § 13-1204 of the Arizona Revised Statutes.  See id. ¶ 10, at 3-4.  The PSR explained that the aggravated assault conviction qualified as "a conviction for a felony that is . . . a crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii), leading to a sixteen-level enhancement.  See id.  Probation also factored in a two-level reduction in Lopez-Lopez' offense level because he accepted responsibility for his offense and a one-level reduction based on the United States' intention to move at sentencing for such a reduction, resulting in an adjusted offense level of twenty-one.  See id. ¶¶ 11-13, at 4.

The Court held a sentencing hearing on March 31, 2005.  The Court rejected the Plea

Agreement because the prior aggravated assault conviction entitled Lopez-Lopez to an adjusted offense level of twenty-one, and the Court could only grant a downward departure of up to four levels under the Guidelines and the approved "fast-track" program for the District of New Mexico. See Memorandum Opinion and Order at 2, 6, filed July 15, 2005 (Doc. 32).  See also U.S.S.G. § 5K3.1 (governing downward departures in early disposition program cases and providing for downward departures of up to 4 levels "pursuant to an early disposition program").  The Plea Agreement, however, would lead to a downward departure greater than four levels.  See Memorandum Opinion and Order at 7.[2]  The Court declined to decide whether it would sentence Lopez-Lopez consistent with an offense level of nine, because the parties had stipulated to a specific and incorrect offense level rather than agreeing to a specific sentence and asking the Court for a departure and/or deviation. See id.  Cf. Fed. R. Crim. P. 11(c)(1)(C)("If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will . . . agree that a specific sentence or sentencing range is the appropriate disposition of the case. . . .").

At the sentencing hearing, after revoking the Plea Agreement, Lopez-Lopez represented to the Court that he wished to withdraw his plea of guilty. See Transcript of Hearing at 18:3-14 (taken March 31, 2005).[3]  The United States conceded that Lopez-Lopez had the ability to withdraw his

---

[2] The Court also stated that a plea agreement would not be available under the fast-track program because of Lopez-Lopez' prior conviction for a crime of violence: aggravated assault.  See Memorandum Opinion and Order at 7.  The Court need not decide whether, after Leocal v. Ashcroft, 125 S. Ct. 377 (2004), and United States v. Perez-Vargas, 414 F.3d 1282 (10th Cir. 2005), that ground would be correct.  The § 5K3.1 ground remains valid and sufficient to support the Court's rejection of the Plea Agreement.

[3] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

guilty plea.  See id.

Subsequently, the United States and Lopez-Lopez entered into a Second Plea Agreement, whereby Lopez-Lopez agreed to plead guilty to the charged offense.  See Second Plea Agreement at 2, filed May 9, 2005 (Doc. 27).  The Second Plea Agreement did not stipulate to either a specific sentence or offense level.  See generally Second Plea Agreement.  On May 9, 2005, Lopez-Lopez pled guilty to the single charged offense in the Indictment.  See Clerk's Minutes at 1, filed May 9, 2005 (Doc. 25).

On June 27, 2005, Lopez-Lopez filed his Sentencing Memorandum and Motion for a Downward Departure ("Sentencing Memorandum").  In his sentencing memorandum, Lopez-Lopez stated: "Defendant does not contend that this [sixteen-level] increase is incorrect under a strict application of the Guidelines but rather asks the Court to depart from the Adjusted Offense Level because the circumstances of the prior conviction upon which the sixteen level increase is based, bring this case out of the heartland of cases taken into consideration by the Sentencing Commission in promulgating the Guidelines."  Sentencing Memorandum at 1.  Lopez-Lopez thus asks the Court to grant him a downward departure of eight offense levels because the facts of his prior conviction show that he did not commit an intentional or reckless act of violence upon another, regardless of the fact that the charged offense was labeled "aggravated assault."  See id. at 6.  Lopez-Lopez asserts that he merely fell asleep while driving intoxicated and that these facts do not support an enhancement for a crime of violence.  See id. at 5, 13.

Lopez-Lopez also filed a joint stipulation with the United States stating that, in the aggravated assault case, Lopez-Lopez "was driving a vehicle with a blood/alcohol level of .14%, and that this caused an accident in which several victims were severely injured."  Stipulation in Support of

Sentencing Memorandum at 1, filed July 6, 2005 (Doc. 31).  The stipulation further explained that no evidence was introduced in the Arizona proceeding to prove that Lopez-Lopez had "injured the victims intentionally or that he was driving in a reckless manner."  Id.  Lopez-Lopez also submitted a separate affidavit that he had driven "under the influence of alcohol" and that he did not plead to injuring people intentionally or recklessly.  See Affidavit of Defendant in Support of Sentencing Memorandum at 1, filed June  28, 2005 (Doc. 30).

Despite conceding on the first page of his June 27th sentencing memorandum that the Court's and Probation's sixteen-level enhancement was correct under the Guidelines, Lopez-Lopez filed an addendum on August 1, 2005, that again argued the Court was incorrect under the Guidelines. Lopez-Lopez explained that the Tenth Circuit's July 15, 2005 decision in United States v. Perez-Vargas, 414 F.3d 1282 (10th Cir. 2005), mandates that the Court should not impose the sixteen-level enhancement at all and instead only recognize a four-level enhancement for a prior felony.  See Addendum to Defendant's Sentencing Memorandum and Motion for Downward Departure at 1-2 ("Addendum"), filed August 1, 2005 (Doc. 34).  In the alternative, Lopez-Lopez asks the Court to use the Perez-Vargas analysis to hold that a reasonable sentence would be eight months.  See id. at 2-3.

The Court held a sentencing hearing on September 30, 2005.  Lopez-Lopez' counsel argued that the Court "should not rely upon the different names that different states give a crime" but instead look at the facts of Lopez-Lopez' prior conviction, which were that he caused injuries while driving under intoxication.  Transcript of Hearing at 12:11-13:16 (taken September 30, 2005).[4]  Lopez-

---

[4] All further citations to "Transcript of Hearing" refer to the transcript of the September 30, 2005, sentencing hearing.

Lopez' counsel also explained that the Court could deviate from the Guidelines by looking at the circumstances of the offense.  See id. at 14:11-16.

The United States admitted that a sixteen-level enhancement "may be legally correct," but argued that the Court should "adjust the defendant's sentence so that he is punished consistent with other defendants who were convicted of drunk driving in another state." Id. at 15:11-17.  The United States contended that application of a sixteen-level enhancement for a crime of violence on facts such as these would lead to "nonsensical results," id. at 22:3-5, and that the Court should disregard the label that Arizona placed on the crime and concentrate on the facts of Lopez-Lopez' actual offense, see id. at 19:16-25, 20:24-21:3.  The United States also expressed its belief that the Tenth Circuit would revisit this issue in the future.  See id. at 22:3-7.  The United States joined Lopez-Lopez' request for a deviation under United States v. Booker, 125 S. Ct. 738 (2005), to an offense level of ten.  See Transcript of Hearing at 17:15-18:1.

At the hearing, the United States indicated its intention to move under U.S.S.G. § 3E1.1(b) that Lopez-Lopez' offense level be reduced by an additional offense level for acceptance of responsibility.  See id. at 3:10-4:8.  The United States filed its motion on October 3, 2005, requesting the one-level reduction because Lopez-Lopez timely notified the United States of his intention to plead guilty, thereby saving the United States and the Court scarce resources in this matter.  See United States' Motion for § 3E1.1(b) Downward Adjustment at 1, filed October 3, 2005 (Doc. 39).

## LAW REGARDING MOTIONS FOR A DOWNWARD DEPARTURE

Although Booker rendered the Guidelines advisory, the Supreme Court of the United States made clear that courts must still consider the Guidelines ranges in fashioning an appropriate sentence. See United States v. Booker, 125 S. Ct. at 756.  As "an integral part of the [Guidelines application

process," the Court must also consult the Guidelines' provisions that provide for downward departures.  See United States v. Sierra-Castillo, 405 F.3d 932, 939 n.5 (10th Cir. 2005)(citations omitted).

> The Guidelines explain that a court should sentence within the Guidelines range
>
> unless the court finds, pursuant to 18 U.S.C. § 3553(b)(1), that there exists an aggravating or mitigating circumstance . . . of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the [G]uidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described.

U.S.S.G. § 5K2.0(a)(1)(A).  For a defendant to qualify for a departure, "certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline."  Koon v. United States, 518 U.S. 81, 98 (1996).  "A sentencing court determines whether a case falls outside the heartland of the Sentencing Guidelines by carefully assessing the facts of the case and 'comparing those facts to the facts of other cases falling within the [G]uidelines's heartland.'"  United States v. Alfaro-Zayas, 196 F.3d 1338, 1343 (11th Cir. 1999)(quoting United States v. Hoffer, 129 F.3d 1196, 1200 (11th Cir. 1997)).  The district court's decision is "due substantial deference," Koon v. United States, 518 U.S. at 98, and is essentially "a fact-based judgment call that falls within the district court's sentencing discretion," United States v. Diaz-Diaz, 135 F.3d 572, 581-82 (8th Cir. 1998)(citation omitted).

Once the Court discerns a factor that is present in the case which makes it "atypical," the Court may exercise its discretion to depart from the Guidelines.  United States v. Fagan, 162 F.3d 1280, 1283 (10th Cir. 1998)(citing Koon v. United States, 518 U.S. at 94).  "Unless specifically prohibited by the Sentencing Guidelines, any factor may be considered as a potential basis for departure."  See id. (citing Koon v. United States, 518 U.S. at 109).  The only question the Court

must answer to determine whether a factor can be an appropriate basis for a departure is "whether the Commission has proscribed, as a categorical matter, consideration of the factor." <u>Koon v. United States</u>, 518 U.S. at 109. If the Court answers that question in the negative, the Court must then decide "whether the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline." <u>Id.</u> <u>See</u> <u>also</u> <u>United States v. Fagan</u>, 162 F.3d at 1283.

The Court's discretion to consider any factor in granting a departure is broad, for the Guidelines "place essentially no limit on the number of potential [non-prohibited] factors that may warrant a departure." <u>Koon v. United States</u>, 518 U.S. at 106. With the exception of these specifically listed enumerated factors, the Sentencing Commission did "not intend to limit the kinds of factors, whether or not mentioned anywhere else in the [G]uidelines, that could constitute grounds for departure in an unusual case." <u>Id.</u> <u>See</u> <u>also</u> <u>United States v. Jones</u>, 332 F.3d 1294, 1301 (10th Cir. 2003).

U.S.S.G. § 5K2.0(d)(1)-(6) lists the prohibited factors. The particular circumstances of a prior conviction giving rise to an enhancement is not among the factors listed therein. <u>See</u> U.S.S.G. § 5K2.0(d)(1)-(6). The Eighth Circuit came to the same conclusion with regard to the enhancement for a prior conviction for an aggravated felony. <u>See</u> <u>United States v. Diaz-Diaz</u>, 135 F.3d at 582 (affirming the district court's grant of a downward departure based on the seriousness of the offense underlying the prior conviction). In an unpublished opinion, the Tenth Circuit also recognized the value of examining the circumstances of a prior conviction in deciding a motion to depart:

> Relying upon the November 1, 1997 version of USSG § 2L1.2 and <u>Koon</u>, the Eighth Circuit has recognized that the seriousness of the "aggravated felony" may be a valid basis for downward departure. Therefor [sic], we will remand for the district court to consider, consistent with <u>Koon</u>, whether a downward departure is appropriate in this case.

United States v. Robles-Medina, 1999 U.S. App. LEXIS 13794, at *7-8 (10th Cir. June 23, 1999)(unpublished opinion)(citations omitted).[5]

The Court thus has it within its discretion to consider the prior circumstances of a crime of violence giving rise to an enhancement for the purpose of determining whether a defendant should receive a downward departure.  It is not one of the prohibited factors, and the Tenth and Eighth Circuits have relied on a similar factor.

### ANALYSIS

There are essentially three issues that the Court must resolve in determining an appropriate sentence for Lopez-Lopez.  First, Lopez-Lopez challenges the sixteen-level enhancement on the basis that the prior conviction for aggravated assault is not a conviction for a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii).  Second, Lopez-Lopez asks the Court to grant a downward departure of eight offense levels.  Finally, Lopez-Lopez and the United States jointly move for a deviation from the Guidelines.

### I.  LOPEZ-LOPEZ' PRIOR CONVICTION FOR AGGRAVATED ASSAULT QUALIFIES FOR A SIXTEEN-LEVEL ENHANCEMENT.

The PSR determined that Lopez-Lopez' base offense level was eight and that he was entitled to a sixteen-level enhancement for a prior conviction for a crime of violence.  See PSR ¶¶ 9-10, at 3-4.  By subtracting two points for acceptance of responsibility and another point based on the United States' intention to move for an additional one-level reduction in the offense level at sentencing, the

---

[5] The Tenth Circuit Rule 36.3(B) states: "Citation to an unpublished decision is disfavored. But an unpublished decision may be cited to if: (i) it has persuasive value with respect to a material issue that has not been addressed in a published opinion; and (ii) it would assist the court in its disposition."  This unpublished decision meets both these criteria and the rules therefore allow citation to this unpublished decision.

PSR calculated Lopez-Lopez' adjusted offense level as twenty-one.  Lopez-Lopez attacks the sixteen-level enhancement.  See id. ¶¶ 11-13, at 4.

Under U.S.S.G. § 2L1.2(b)(1)(A)(ii), a defendant qualifies for a sixteen-level enhancement if he "previously was deported . . . after . . . a conviction for a felony that is . . . a crime of violence." The Guidelines define a crime of violence as

> any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

Application Note 1(B)(iii) to U.S.S.G. § 2L1.2(b)(1)(A)(ii) ("Note 1").

The PSR recommended that Lopez-Lopez receive such a sixteen-level enhancement because he was previously convicted of aggravated assault, which is one of the offenses enumerated in Note 1 as a crime of violence, in Arizona.  See PSR ¶ 10, at 3-4.  Subsequent to that conviction, Lopez-Lopez was deported.  See id.

Lopez-Lopez objects to the sixteen-level enhancement by relying on the Tenth Circuit's recent decision in Perez-Vargas.  In Perez-Vargas, the Tenth Circuit clarified its position regarding the definition of a crime of violence and the underlying facts and admissions by a defendant to support such a finding.  The Court of Appeals held that Colorado's third degree assault statute did not qualify as a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii) because it did not include "the use or threatened use of 'physical force'" as an element of the offense as required by Application Note 1. See United States v. Perez-Vargas, 414 F.3d at 1287.  Colorado law states that a defendant commits third degree assault when he "knowingly or recklessly causes bodily injury to another person or with criminal negligence he causes bodily injury to another person by means of a deadly weapon."  See id.

at 1285 (quoting C.R.S. § 18-1-903(3)(a)).  A person can commit third degree assault by knowingly or recklessly causing bodily injury to another without using or threatening to use physical force because the statute focuses on the "the **result** of a defendant's conduct, i.e., bodily injury" rather than the "**means** by which an injury occurs."  See id. (emphasis in original).  The Tenth Circuit said that the Colorado statutes "allowed for other possibilities" than use of force for injury to be punishable under the statute.

Lopez-Lopez contends that the language in the Colorado statute at issue in Perez-Vargas is very similar to the language of the Arizona statute to which he entered a guilty plea and admitted violating.  Lopez-Lopez argues that Arizona's aggravated assault statute similarly falls short of being a crime of violence because it, too, does not have as an element the use or threatened use of physical force.  See Addendum at 2.  Arizona defines aggravated assault as an assault committed in one of thirteen ways, including an assault that "causes serious physical injury to another."  See Arizona Revised Statute § 13-1204(A)(1).  The underlying offense, assault, is defined as "[i]ntentionally, knowingly or recklessly causing any physical injury to another person."  Arizona Revised Statute § 13-1203.  As the statute indicates, using or threatening to use physical force is not required to complete the crime of aggravated assault in Arizona and so, according to Lopez-Lopez, it is not a crime of violence.  See Addendum at 2.

Assuming that Arizona's aggravated assault statute does not have as an element the use or threatened use of physical force, the primary issue is whether the Guidelines require that the statutory definition of the offense include the use or threatened use of physical violence for the offense to be a crime of violence.  According to Note 1, there are two requirements for an offense to qualify as a crime of violence: (i) the offense must be "murder, manslaughter, kidnapping, aggravated assault,

forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling"; (ii) the offense must be "any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."  See Note 1.  If the requirements are conjunctive, then a crime of violence consists of only those enumerated offenses that have as an element the use, attempted use, or threatened use of physical force against the person of another.  In that case, Lopez-Lopez would be correct that a failure to include the use or threatened use of physical force within the statutory definition would doom it as a crime of violence.  On the other hand, if the requirements are disjunctive, then a crime of violence could be either one of the enumerated offenses or any offense that has as an element the use, attempted use, or threatened use of physical force against the person of another.

        As the text of Note 1 itself reveals, the requirements of a crime of violence are disjunctive. Note 1 uses the word "or" to separate the two requirements, indicating that a crime of violence can be satisfied by an offense that meets either requirement.   Indeed, a recent amendment to the commentary to the Sentencing Guidelines placed "or" within the crime of violence definition, in place of the word "and," to make it crystal clear that the requirements were disjunctive. See United States v. Munguia-Sanchez, 365 F.3d 877, 882 (10th Cir. 2004).  As the Sentencing Commission explained: "The previous definition often led to confusion over whether the specified offenses listed in that definition [of crime of violence], particularly sexual abuse of a minor and residential burglary, also had to include as an element of the offense 'the use, attempted use, or threatened use of physical force against the person of another.'"  See id.  (quoting U.S.S.G. app. C (vol. II), amend. 658, at 401-02 (Supp. 2003))(emphasis added).  To remedy this misunderstanding, "[t]he amended definition makes

clear that **the enumerated offenses are always classified as 'crimes of violence,'** regardless of whether the prior offense expressly has as an element the use, attempted use, or threatened use of physical force against the person of another." See id. (quoting U.S.S.G. app. C (vol. II), amend. 658, at 401-02 (Supp. 2003))(emphasis added).  Furthermore, the Tenth Circuit has explicitly ruled that the two requirements are disjunctive:

> [T]he "crime of violence" definition lists several offenses that do not require the proof of the use or threatened or attempted use of force. . . .  The fact that those offenses are "crimes of violence" indicates that the definition is disjunctive; the contrary reading -- that an offense must satisfy both subparts -- would mean, nonsensically, that those offenses could not be crimes of violence, even though they are specifically listed as such.
>
> *  *  *  *
>
> That clarifying commentary forecloses the conjunctive reading of the "crime of violence" definition urged by [the defendant].

United States v. Munguia-Sanchez, 365 F.3d at 880-882.[6]

Arizona's aggravated assault statute is a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii) if it is one of the enumerated crimes in the first part of Note 1 or has as an element the use, attempted use, or threatened use of physical force against the person of another, but it does not need to satisfy both requirements.  One of the enumerated crimes is aggravated assault.  Because the enumerated offenses are always classified as crimes of violence, Arizona's crime of aggravated

---

[6]At the Court's September 30 hearing, the United States called into question the validity of Munguia-Sanchez.  See Transcript of Hearing at 22:3-7.  Leocal, however, dealt with 18 U.S.C. §16, and Perez-Vargas dealt with subsection (ii) of U.S.S.G. § 2L1.2(b)(1)(A), not a listed offense. Compare Leocal v. Ashcroft, 125 S. Ct. at 377, with United States v. Perez-Vargas, 414 F.3d at 1282.  Accordingly, the United States has not presented the Court with reasons that the Tenth Circuit might reconsider Munguia-Sanchez.  In any case, there not being any subsequent Tenth Circuit opinion or order that calls the opinion in Munguia-Sanchez into question, the Court is bound by its holding.

assault is a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii).  See id.  Lopez-Lopez' prior conviction for aggravated assault was therefore a conviction for a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii).

The result in this case is different from Perez-Vargas because the prior conviction in that case was for assault in the third degree, which is not an enumerated crime of violence.  See United States v. Perez-Vargas, 414 F.3d at 1286.  The Tenth Circuit was dealing with that portion of U.S.S.G. § 2L1.2(b)(1)(A)(ii) that requires as an element "the use, attempted use, [or] threatened use of physical force against the person of another."  See id. at 1285.  In contrast, the offense for which Lopez-Lopez was convicted is specifically labeled "aggravated assault."  Arizona Revised Statute § 13-1204.  As one of the enumerated offenses in Note 1, it is automatically a crime of violence.  See United States v. Munguia-Sanchez, 365 F.3d at 882.

Lopez-Lopez urges the Court to look beyond the name that Arizona has given the crime to its substance.  See Transcript of Hearing at 12:11-22.  While such an approach may be appropriate for determining whether to deviate from the Guidelines, the Court declines to peek behind the curtain of Arizona's aggravated assault statute for purposes of the Guidelines.  The Guidelines clearly spell out that aggravated assault is a crime of violence, and all of the parties agree that Lopez-Lopez was convicted of aggravated assault.  Thus, a sixteen-level enhancement for a crime of violence is appropriate in this case.

## II.     THE COURT DENIES THE REQUEST FOR A DOWNWARD DEPARTURE.

Lopez-Lopez requests a downward departure because of the nature of his offense.  First, he argues that the fact that Lopez-Lopez came here merely to support his family, as opposed to smuggling illicit drugs or plotting terrorist acts, warrants a departure.  See id. at 10:2-13.  Second,

Lopez-Lopez contends that the facts behind his prior conviction for aggravated assault – he fell asleep while driving and intoxicated – "bring this case out of the heartland of cases taken into consideration by the Sentencing Commission in promulgating the Guidelines."  <u>See</u> Sentencing Memorandum at 1.  The United States opposes Lopez-Lopez' motion for a departure.  <u>See</u> Transcript of Hearing at 16:3-9.

      The Court fails to see how Lopez-Lopez' case resides anywhere but in the heartland of similar cases.  While it is appropriate for the Court to look beyond the charges itself to the circumstances of Lopez-Lopez' prior felony, that examination does not help Lopez-Lopez' case in the Court's eyes.  The Court is not inclined to characterize his crime in Arizona – which involved drinking, driving, and injuring people – as a minor offense or a relatively minor offense.   Supporting one's family, as a motive for illegal reentry, is hardly unique.  The Court sees many illegal reentry defendants who come to the United States to create a better life for themselves and their families.  Lopez-Lopez' case sits squarely in the mainstream of such cases.     As for Lopez-Lopez' prior conviction for aggravated assault, the Court finds nothing unusual about it as a basis for a sixteen-level enhancement.  Nothing distinguishes Lopez-Lopez from others who commit aggravated assault.  Without more, Lopez-Lopez' case remains firmly rooted in the heartland.

      While the Court has authority under the Guidelines to depart down from the adjusted offense-level, the Court does not believe such a departure will be appropriate.  The Court chooses not to depart because it does not believe a departure is warranted under the facts and circumstances here.  Unfortunately, this District, as well as federal courts generally, see many defendants similar to Lopez-Lopez.  The Court has trouble distinguishing this case from many others before it.  His case fits into the heartland of cases.  Thus, even though the Guidelines may authorize a departure under the facts

of this case, the Court will exercise its discretion not to depart, because his case remains within the heartland of cases that the Guidelines have adequately addressed.

## III.   THE COURT GRANTS THE JOINT REQUEST FOR A DEVIATION.

Lopez-Lopez requests that, even if a departure is not warranted under the Guidelines, the Court should nevertheless exercise its discretion and impose a sentence below that of the prescribed Guidelines range pursuant to United States v. Booker.  See Addendum at 2-3.  The United States has joined Lopez-Lopez in his request for a deviation.  See Transcript of Hearing at 17:15-18:1.

Under the United States Attorneys' fast-track program, which the United States Attorney General has approved, "if an illegal alien has a prior conviction or arrest for a crime of violence as defined in 18 U.S.C. §16, the defendant is not offered a fast-track plea offer beyond a non-binding stipulation to a reduction for acceptance of responsibility."  D.N.M.'s Rept at 1 (2003).  See Memorandum from Guy A. Lewis, Director, Executive Office for United States Attorneys, DOJ to United States Attorneys at 2 (dated Oct. 24, 2002).  Since Leocal, and because different statutes classify drunk driving differently, the United States Attorneys' Office for the District has apparently decided to implement a blanket rule that no prior convictions for drunk driving will be treated as a crime of violence under 18 U.S.C. §16.  See Transcript of Hearing at 18:1-10.  The Court has some concern that this blanket rule, without a case-by-case analysis, is inconsistent with the fast-track program that Congress has authorized.  In other words, the Office may be offering fast-track pleas to people who are not, under the program that the Attorney General approved, eligible because their conviction may have been a crime of violence.

While the Court need not, in this case, decide whether the Office can offer a fast-track plea to a defendant who has "a prior conviction or arrest for a crime of violence as defined in 18 U.S.C.

§16" -- because the Court rejected the fast-track argument here on other grounds -- the Court is

concerned about another practice of the Office that has an impact on the Court's task here.

Apparently the Office also does not believe that drunk driving ever can be a crime of violence under

U.S.S.G. § 2L1.2(b)(1)(A)(ii).  The United States is thus offering fast-track pleas, and not seeking

enhancements, for anyone with a prior drunk driving conviction.  The United States Attorneys' Office

represents that, since Leocal, it has been treating Illegal Reentry defendants with a prior drunk driving

conviction differently than before.  See id.

While the Court has urged the United States Attorneys' Office, if it believes the Court's

Guidelines analysis in United States v. Rosales-Valdez, No. CR04-1195, and here is wrong, to show

the Court how its analysis is wrong, the United States Attorneys' Office has declined to do so, saying

that it believes the Tenth Circuit will change its mind because the result is unfair.  At the hearing,

Assistant United States Attorney Norman Cairns stated:

> Well, I respect the Court's analysis on this issue and while the Court may certainly be
> legally and technically correct, that the [D]efendant's [G]uideline offense level's [been]
> correctly [calculated,] but the result is essentially the [D]efendant's conduct[,] his
> actual conduct and the elements of the crime to which he was [convicted] are
> therefore irrelevant to the punishment that he receives. . . .  And while that may be
> legally correct, it's not right or just, and we would ask that the [D]efendant[,] that the
> Court[,] if the Court is going to maintain that the [G]uideline range was correctly
> calculated[,] we'd ask that the Court adjust the [D]efendant's sentence so that he is
> punished consistent with other defendants who were convicted of drunk driving in
> another state. . . . Well Your Honor that may very well be the law but what I'm
> suggesting is [ ] that if that's the law [then] it's going to produce nonsensical [results]
> and ultimately the [Tenth C]ircuit is going to realize that that can't be -- that that rule
> doesn't work, because as I said it's going to produce nonsensical results.

See id. at 15:2-8, 15:11-17, 22:16-21.

While the Court is not convinced that Leocal made all illegal reentry defendants with a drug

dealing conviction eligible for fast-track offers, or that a defendant convicted of aggravated assault

while driving drunk and injuring people can never be a crime of violence under the Guidelines,  this Court is concerned that the Office's current practices and beliefs create a real danger that this Court – if it applied a Guidelines sentence to Lopez-Lopez – would be treating him differently, and significantly differently, from others in similar situations within the District.  If the Court were to give Lopez-Lopez a sentence within the Guidelines range, 46-57 months, the Court would be concerned that Lopez-Lopez would be receiving a sentence greater than others are receiving in this District. Given that the Office has a broader perspective on cases like this one than does the Court, its representation that a Guideline sentence would be treating Lopez-Lopez unfairly and differently from others similarly situated troubles the Court.  This Court also notes that the Arizona aggravated assault, while serious, is Lopez-Lopez' only other felony conviction.

The Court has fully considered the applicable sentencing range based on the United States Sentencing Guidelines.  In light of other sentencing goals, most particularly "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," the Court declines to impose a sentence within the range the Sentencing Guidelines prescribe.  18 U.S.C. § 3553(a)(6).  The Court will impose a reasonable sentence that, although it varies from the Guidelines, will more effectively promote the sentencing goals outlined in 18 U.S.C. § 3553(a).

A sentence of 427 days or time served, whichever is less, while it varies from the Guidelines, will more effectively promote the sentencing goals provided for in 18 U.S.C. § 3553(a).  The Court imposes this sentence outside of the Guidelines range because it is concerned about inconsistent sentences.  While the prior aggravated assault conviction is a serious felony, the Court believes it proper to sentence Lopez-Lopez close to the same level as other drunk drivers who go through the

United States Attorneys' fast-track process for Illegal Reentry. Seen in this light, a more appropriate offense level in this case would be ten, significantly lower than the adjusted offense level of twenty-one in the PSR. This level is still higher than the level nine, which is apparently what other similarly situated defendants receive.

The Court believes that a sentence of 427 days or time served, whichever is less, reflects the seriousness of this offense, promotes respect for the law, provides just punishment, affords adequate deterrent, protects the public, and provides correctional treatment in the most effective manner. This sentence fully reflects each of the factors embodied in 18 U.S.C. § 3553(a). The Court also believes the sentence is reasonable. The Court believes that the sentence is sufficient, but not greater than necessary, to comply with the purposes of punishment set forth in the Sentencing Reform Act.

**IT IS ORDERED** that the Court adopts the PSR's calculation of an adjusted offense level of twenty-one. The Court denies Lopez-Lopez' request for a downward departure. The Court grants Lopez-Lopez and the United States' joint motion for a deviation from the Guidelines range and imposes a sentence of 427 days or time served, whichever is less.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

David C. Iglesias
  United States Attorney
Norman Cairns
  Assistant United States Attorney
Albuquerque, New Mexico

*Attorney for the Plaintiff*

William E. Parnall
Albuquerque, NM

   *Attorney for the Defendant*